**EAGLE–PICHER INDUSTRIES, INC.**

v.

**AMERICAN EMPLOYERS' INSUR-ANCE COMPANY, et al.**

**Civ. A. No. 83–348–Z.**

United States District Court,
D. Massachusetts.

Jan. 19, 1988.

Charles R. Parrott, Brian T. Kenner, Nutter, McClennan & Fish, Boston, Mass., for plaintiffs.

Richard H. Gimer, Hamel & Park, Washington, D.C., for American Employers.

Alice E. Richmond, Hemenway & Barnes, Boston, Mass., for Prudential Reinsurance.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Eagle–Picher Industries, Inc., a manufacturer of asbestos products, has brought two separate declaratory judgment actions against various insurance companies. This case ("*Eagle–Picher II*") is now before me on plaintiff's and defendant's motions for partial summary judgment and defendant's motion for summary judgment.

The main issue in both suits is which, if any, of the policies issued by defendants cover which claims against plaintiff for asbestos-related injuries. The key to that determination is the definition of when each claim "occurred". In the first lawsuit, *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, ("*Eagle–Picher I*"), I decided that coverage was triggered when the disease manifested itself, not when exposure to asbestos occurred. *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 523 F.Supp. 110, 115 (D.Mass.1981). That decision was affirmed in 1982. The Court of Appeals defined manifestation as the time when the claims first became "reasonably capable of medical diagnosis." *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 682 F.2d 12, 25 (1st Cir.1982), *cert. denied sub nom. Froude v. Eagle–Picher Industries, Inc.*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). While that appeal was pending, plaintiff filed the instant case, *Eagle–Picher II*, in the United States District Court for the District of Columbia, which subsequently transferred it to this court. Defendant American Employers was plaintiff's first-level excess insurer from 1967 to 1973. The other defendant, Prudential Reinsurance, was dismissed without prejudice last year, by agreement of the parties.

After a week-long implementation hearing in *Eagle–Picher I* involving plaintiff and the sole defendant that had not settled in that case, American Motorists Insurance Company, I adopted the plaintiff's proposal, which defined manifestation as occurring six years before the date of actual diagnosis. The Court of Appeals by decision dated September 16, 1987 modifed this Court's ruling, holding that defendants must have an opportunity to rebut the validity of the manifestation date, as applied to individual claims, with "clear and convincing evidence". *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 829 F.2d 227, 237 (1st Cir.1987). Furthermore, the Court of Appeals held that the six-year rollback was valid only as to asbestosis cases, and remanded for further proceed-

ings to determine the manifestation date for other diseases. *Id.* at 241–42.

Before the most recent appellate decision in *Eagle–Picher I*, I denied plaintiff's motion for entry of final judgment in this case. I held that my implementation decision in the earlier case would not have collateral estoppel effect because defendants had not had a full and fair opportunity to litigate the issues. *Eagle–Picher Industries, Inc. v. American Employers Ins. Co.*, No. 83–348–Z (D.Mass. July 10, 1986).

Both parties now seek at least partial summary judgment through motions filed before the Court of Appeals affirmed the six-year rollback. Defendant seeks summary judgment on the grounds of *stare decisis*, rule of the case, collateral estoppel, judicial estoppel, laches and equitable estoppel. In the alternative, defendant moves for partial summary judgment, contending that as to those claims for which Eagle–Picher has received indemnification from other insurers, plaintiff is subrogated to those insurers and is not the real party in interest as required by Fed.R.Civ.P. 17(a).

Plaintiff seeks partial summary judgment on the grounds that *stare decisis* requires rejection of the protocol proposed by American Employers because it is substantially similar to that found wanting in the earlier case. In a supplemental memorandum filed after the Court of Appeals decision, plaintiff appears to modify its position to conform with that ruling, giving the rollback presumptive effect subject to case-by-case rebuttal.

Both of defendant's motions are denied. I reserve judgment on plaintiff's motion pending a hearing regarding the *stare decisis* effect of the Court of Appeals' September 16 decision. I will address defendant's motions first.

The gravamen of defendant's motion for summary judgment is that Eagle–Picher's proposed six-year rollback is barred by various judicial doctrines because it conflicts with the Court of Appeal's 1983 decision. The more recent appellate decision, upholding the validity of a six-year rollback, drains this contention of whatever vitality it once might have had.

■ Defendant's argument that plaintiff is barred by the doctrine of judicial estoppel from seeking a six-year rollback because it once proposed the definition of "occurrence" as the date of actual diagnosis also fails. This is not a proper case for application of the doctrine of judicial estoppel, which is designed to prevent parties from playing "fast and loose" with the courts. *See Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir.1987). Here, plaintiff changed its position because of an intervening decision by the Court of Appeals holding that the date of actual diagnosis was not an acceptable manifestation date. *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 682 F.2d at 24. Such a modification to conform with a change in the law is not the sort of "intentional self-contradiction ... used as a means of obtaining unfair advantage" barred by the doctrine of judicial estoppel. *Patriot Cinemas*, at 212 (quoting *Scarano v. Central R.R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)).

Defendant also supports its motion for summary judgment with arguments that laches and equitable estoppel bar plaintiff from prevailing because plaintiff led defendant to believe that its coverage would not be reached and did not give defendant timely notice of the claims implicating American Employers' coverage.[1]

■ Plaintiff disputes these contentions with an affidavit from Vincent M. Rhoney, an employee of Eagle–Picher with responsibility for the company's insurance since 1968,[2] who states that plaintiff gave de-

---

1. Defendant contends that its laches and equitable estoppel arguments are based on facts independent of a notice defense. However, in its brief in support of summary judgment, it bases those arguments in part on an allegation that Eagle–Picher failed to provide notice and thus prejudiced American Employers. Memo-

randum in Support of Motion for Summary Judgment of Defendant American Employers' Insurance Company, at 43.

2. Plaintiff submitted Rhoney's affidavit along with its brief in opposition to defendant's motion to strike a previous and similar affidavit,

fendant timely notice of the claims and never represented that defendant's coverage would not be needed. As to the issue of notice, there exist genuine issues of material fact as to whether notice was timely given, what the underlying factual circumstances were, and how defendant responded, once plaintiff provided notice. In regard to the representations upon which defendant contends it relied, genuine issues of material fact exist as to what plaintiff said, what it knew at the time and defendant's response. In defendant's brief in support of its motion to strike Rhoney's affidavit, it contends that affiant's statement that plaintiff never represented that defendant's insurance would not be reached is "true only in the most technical sense of the word." This statement, if not a concession by defendant, at least indicates the existence of issues of fact.

Defendant's motion for partial summary judgment is based on plaintiff's settlement with various insurers through the Wellington Asbestos Claims Facility. Defendant contends that, through this facility, plaintiff was indemnified for all claims asserted against it after October 1975 that would fall within defendant's coverage period under a six-year rollback. Therefore, defendant argues, plaintiff's rights against American Employers are subrogated to those of the insurers contributing to the facility. Thus, defendant concludes, plaintiff is not the real party in interest, as required by Fed.R.Civ.P. 17(a).

The allocation of claims to policy periods depends at the outset on the implementation method used. That issue has yet to be decided in this case and, except as to asbestosis, in *Eagle–Picher I*. Even if a six-year rollback were adopted, the opportunity for

rebuttal renders the ultimate allocation unclear. Furthermore, the allocation of settlement payments to specific claims also is a complex and as yet undefined determination. *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.*, 829 F.2d 227, 245 (1st Cir.1987). The Court of Appeals recognized that the allocation that might result in an apparent double payment "is, indeed, a fiction." *Id.* at 239–40 & n. 13. The Court of Appeals noted that the insurer should not be able to avoid payment because of intervening settlements, nor should plaintiff be able to avoid presentation of individual claims for the same reason. *Id.* at 246–47. It remanded to this Court the question of how to satisfy both concerns and this Court has not yet addressed that issue.

■ The complexity of this background leads to one simple conclusion: a genuine issue of material fact exists regarding, at the very least, the question whether plaintiff has been indemnified for any easily defined group of claims falling within defendant's coverage period. The contention that the claims presented now to defendant for indemnification have already been paid puts the cart before the horse. Therefore, defendant's motion for partial summary judgment is denied.

Plaintiff's motion for partial summary judgment is more troubling. Plaintiff contends that the doctrine of *stare decisis* compels the rejection of defendant's proposed protocol. In a supplemental memorandum filed after the September decision by the Court of Appeals in *Eagle–Picher I*, plaintiff contends that the protocol approved and modified by that decision is now binding in this case.

made by Eric R. Thiemann. Because I do not rely on Thiemann's affidavit in resolving the instant motions for summary judgment, I need not reach that motion to strike, nor strike those portions that are based on hearsay, ¶¶ 5, 9. Defendant also has moved to strike Rhoney's affidavit on the grounds that it stated impermissible legal conclusions and is inconsistent with his previous statements. The statements alleged to constitute legal conclusion are: (1) that plaintiff gave "timely notice" to defendant; and (2) that defendant's insurance coverage is reached by a six-year rollback or any "fair and reason-

able" implementation of the manifestation trigger. Given affiant's position with plaintiff, his assertions appear to be statements of fact within the scope of his knowledge, although they incorporate language that may be subject to legal interpretation. As to the argument that Rhoney's 1987 statement that defendant's coverage would be reached is inconsistent with a 1980 affidavit, the changing picture of asbestos litigation in the intervening years indicates that the statement is not "utterly disingenuous," as defendant contends. The motion to strike Rhoney's affidavit is denied.

Defendant contends that the decision in *Eagle–Picher I* addressed issues of fact, not law, and therefore does not merit *stare decisis* treatment; that the posture, underlying circumstances, and proposed protocol in the instant case are significantly different from *Eagle–Picher I;* and that for equitable reasons, *stare decisis* effect should not be granted to the result in *Eagle–Picher I.* Defendant has not, however, addressed the effect of the Court of Appeals decision in September, as it filed its opposition brief before that opinion was issued.

*Stare decisis,* unlike the doctrines of res judicata and collateral estoppel, is not narrowly confined to parties and privies, and it does not draw its force from the policy protecting final judgments. Rather, when its application is deemed appropriate, the doctrine is broad in impact, reaching strangers to the earlier litigation. Further, it leaves some room for judgment as to its preclusive power, and it stems from the principles of stability and equal treatment underlying the orderly development of legal doctrine.

*EEOC v. Trabucco,* 791 F.2d 1, 2 (1st Cir. 1986). The Court of Appeals in that case included among the necessary elements for application of the doctrine that an issue of law has been decided. *Id.* at 4. But it affirmed the application to an earlier holding that the mandatory retirement age of 50 for uniformed members of the state police was a "bona fide occupational qualification," a holding that was based on expert and scientific evidence. The Court of Appeals rejected the argument that a weak presentation in the earlier case precluded *stare decisis* treatment. *Id.* at 4.

The underlying legal conclusion, based on expert evidence, that was reached in *Trabucco* is akin to the implementation decision made in *Eagle–Picher I.* However, the *stare decisis* issue is not so simple in this case for several reasons. First, the precedential effect of the Court of Appeals decision is unclear. The Court itself noted that it was affirming only the choice of the rollback over the protocol proposed by American Motorists Insurance Company. *Eagle–Picher Industries, Inc. v. Liberty Mutual Ins. Co.,* 829 F.2d 227, 235 (1st Cir.1987). The Court added in a footnote that it did not intend to establish for all time the implementation method to be used. *Id.* at 235 n. 12.

Second, defendant contends that the completeness of the claim files is greater, and the number of claims fewer, for the coverage period at issue in this case than for the period involved in *Eagle–Picher I.* The Court of Appeals noted that where such differences existed, it could require an individual review of all claim files rather than an across-the-board rollback. *Id.* at 236.

Finally, defendant has stated in its opposition brief that its implementation protocol was only an outline and that it intends to elaborate on its proposal. This makes it difficult to determine to what extent differences between the American Motorists protocol and defendants may preclude *stare decisis* treatment of *Eagle–Picher I.*

Because the Court of Appeals' most recent decision in *Eagle–Picher I* has not been addressed fully by both parties, I defer ruling on plaintiff's motion for partial summary judgment pending submission of supplemental memoranda and supporting documentation addressing: (1) whether the Court of Appeals decision should have *stare decisis* effect in this case, and (2) if so, as to which holdings.

For the reasons stated above, defendant's motions for summary judgment and partial summary judgment are denied. A decision on plaintiff's motion for partial summary judgment is deferred pending submissions by the parties on the *stare decisis* effect of the Court of Appeals decision issued in *Eagle–Picher I* on September 16. Defendant shall file its memorandum by February 1, 1988 and plaintiff shall respond by February 8, 1988.